**OHIOVIEW INFRASTRUCTURE, INC. and Groveton Housing Partnership, LP, Petitioners**

v.

**PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 13, 2009.

Decided Nov. 23, 2009.

Clifford B. Levine, Pittsburgh, for petitioners.

Robert F. Young, Deputy Chief Counsel, Harrisburg, for respondent.

Richard B. Tucker, III, Pittsburgh, for intervenor, Duquesne Light Company.

BEFORE: SIMPSON, Judge, and FRIEDMAN, Senior Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Ohioview Infrastructure, Inc. and Groveton Housing Partnership, LP, (together, Developers) petition for review of the December 8, 2008, order of the Public Utility Commission (PUC), which denied Developers' exceptions to the decision of an Administrative Law Judge (ALJ), adopted the ALJ's decision and dismissed Developers' complaints. We affirm.

Developers paid Duquesne Light Company (Duquesne) to design, equip and install underground electrical distribution systems for Pleasant Ridge and Groveton Village, two affordable housing developments built by Developers. Developers

filed complaints with the PUC, seeking a refund of the payments and a declaration that Developers were not obligated to pay for the underground utilities because Pleasant Ridge and Groveton Village qualify as "New Residential Developments" under Duquesne's Tariff Rule 13.2.

Rule 13.2(A)(3), relating to "Underground Electric Service in New Residential Developments," sets forth the following definition of "development":

> (3) Development—A planned project which is developed by a developer/applicant for electric service set out in a recorded plot plan of five or more adjoining unoccupied lots for the construction of single-family residences, detached or otherwise, or mobile homes and one or more five-unit apartment houses, all of which are intended for year-round occupancy, **if providing electric service to such project necessitates extending the Company's existing distribution lines.**

(ALJ's dec. at 5–6) (emphasis added). On the other hand, Rule 13.1, relating to "Underground Distribution," provides:

> (A) When [Duquesne] ... enters into agreements with ... a private real estate developer or a group of customers to **change its distribution supply lines from overhead to underground,** customers receiving or to receive electric service at voltages of 600 volts or less from these supply lines shall provide **at their own expense** the necessary facilities for receiving such underground service.

(ALJ's dec. at 6) (emphasis added).

The matter was assigned to the ALJ, who, after a hearing, found that, when Developers contacted Duquesne to discuss the provision of electric power for their planned developments, there were pre-existing Duquesne electrical facilities, including poles, wires, transformers, meters and other structures and devices used in the distribution of electric power to the properties. Developers removed these overhead utilities and paid Duquesne for underground utilities. The ALJ decided that, because Developers could have built developments served by the pre-existing overhead facilities, the case does not involve an extension of Duquesne's existing distribution lines. As a result, the ALJ dismissed the complaints.

Developers filed exceptions to the ALJ's decision. However, the PUC agreed with the ALJ that Pleasant Ridge and Groveton Village could have been served by the existing overhead facilities, and, thus, it was not necessary to extend Duquesne's existing distribution lines. Developers now seek review by this court.

■ The PUC, as the fact-finder in this case, resolves any conflicts in the testimony and weighs the evidence. *PPL Electric Utilities Corporation v. Public Utility Commission,* 912 A.2d 386 (Pa. Cmwlth.2006). This court will affirm an order of the PUC if it is based on substantial evidence and does not contain an error of law or offend constitutional requirements. *Id.* The PUC is the agency charged with regulating utilities and has expertise in such matters; thus, this court will defer to the PUC's interpretation of a tariff, reversing only if the interpretation is clearly erroneous. *Id.*

■ Developers first argue that, in determining whether a project falls within the definition of "development" in Rule 13.2, Duquesne was required to consider the project at the time of the application for service, i.e., after the removal of any preexisting utilities. However, if we were to construe Rule 13.2 in this manner, then every applicant would apply for service after the removal of pre-existing utilities and request free underground facilities,

paid for by ratepayers. Thus, we conclude that it is not clearly erroneous for the PUC to interpret Rule 13.2 to allow Duquesne, when determining the applicability of Rule 13.2, to consider a project prior to the removal of pre-existing utilities.

 Developers further argue that their projects necessitated underground electric lines due to certain design criteria, financing requirements and marketability standards. This may be true, but, in that case, Developers were required to pay for underground electric lines under Rule 13.1. Indeed, the question with respect to Rule 13.2 is not whether it was necessary for Developers to have underground utilities. The question is whether it was necessary for Duquesne to extend its existing distribution lines to provide service. In this regard, the project manager for Pleasant Ridge testified:

> Q. Now, from a purely engineering perspective, leaving aside all of the … policy … considerations, is there any reason why the new … project could not have been served through overhead lines if the [pre-existing] poles and wires were relocated?
>
> A. It could have been served.

(R.R. I at 240a.) Because Developers focused on the needs of their projects rather than Duquesne's need to extend its existing distribution lines to provide service, Developers failed to meet their burden of proof. *See* section 332(a) of the Public Utility Code, 66 Pa.C.S. § 332(a) (stating that the proponent of an order has the burden of proof).

Accordingly, we affirm.

#### ORDER

AND NOW, this 23rd day of November, 2009, the order of the Public Utility Commission, dated December 8, 2008, is hereby affirmed.